## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MIKE BRINKMAN,

  Plaintiff,

v.                                      CASE NO: 8:20-cv-2453-T-33AAS

EQUIFAX INFORMATION SERVICES LLC,
and ACCOUNT RESOLUTION SERVICES, LLC,

  Defendants.
_____/

### PLAINTIFF'S ANSWERS TO THE COURT'S INTERROGATORIES

**1. Are you alleging willful noncompliance with a requirement imposed by the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (FCRA)?**

Plaintiff alleges that Equifax and Account Resolution Services' conduct, action, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n.

**2. If you answered yes to number 1, itemize your actual damages sustained as a result of the alleged failure to comply, or indicate your election of statutory damages.**

Plaintiff is seeking statutory damages as provided by the FCRA. Plaintiff also is seeking actual damages for the economic harm caused by the inaccurate information provided by ARS and published by Equifax. Both Defendants were aware that Plaintiff was purchasing a home. Plaintiff disputed the inaccurate information on at least two occasions in February, 2020. ARS was aware that Plaintiff did not owe the debt as early as March 7, 2020 (if not before) yet continued to report the inaccurate collections account. Plaintiff closed on his home on April 1, 2020 with a much higher interest rate because of the Defendants' reckless conduct. The refinancing cost of his mortgage will be in excess of $6,000. Plaintiff also seeks compensatory damages for mental anguish, stress, aggravation, embarrassment and other related impairments to the enjoyment of life. Plaintiff was desperate to resolve the errors and was forced to close on his home loan while the erroneous collections account was reporting. Plaintiff is seeking punitive damages in an amount to be

determined by the Court pursuant to 15 U.S.C. § 1681n. Plaintiff seeks to recover costs, interest and attorney's fees.

**3.     If you answered yes to number 1, and only if you are seeking to impose liability on a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, itemize your actual damages sustained as a result of the alleged failure to comply, or indicate your election of statutory damages.**

N/A

**4.     If you answered yes to number 1, and only if you are a credit reporting agency seeking to impose liability on a person who obtained a consumer report under false pretenses or knowingly without a permissible purpose, itemize your sustained actual damages.**

N/A

**5. Are you alleging negligent noncompliance with a requirement imposed by the FCRA?**

Yes, Plaintiff is alleging negligent noncompliance with a requirement imposed by the FCRA. The Defendants were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o

**6. If you answered yes to number 5, itemize your actual damages sustained as a result of the alleged failure to comply.**

Defendants inexplicably failed to reasonably investigate Plaintiff's disputes despite having all the necessary information. Plaintiff is seeking actual damages for the economic harm caused by the inaccurate information provided by ARS and published by Equifax.  Both Defendants were aware that Plaintiff was purchasing a home.  Plaintiff disputed the inaccurate information on at least two occasions in February, 2020. ARS was aware that Plaintiff did not owe the debt as early as March 7, 2020 (if not before) yet continued to report the inaccurate collections account.  Plaintiff closed on his home on April 1, 2020 with a much higher interest rate because of the Defendants' reckless conduct.  The refinancing cost of his mortgage will be in excess of $6,000.  Plaintiff also seeks compensatory damages for mental anguish, stress, aggravation, embarrassment and other related impairments to the enjoyment of life.  Plaintiff was desperate to resolve the errors and was forced to close on

his home loan while the erroneous collections account was reporting. Plaintiff is entitled to recover costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**7. Specify all attorney's fees and costs incurred to date. With respect to attorney's fees, provide the hourly rate(s) sought and the number of hours expended by each person who has billed time to this case.**

Lead Attorney, Octavio Gomez, is billing at the rate of $475/hr (10.4 hours in the case so far) with the assistance of Paralegal, Dara Gagliano, bills at the rate of $125/hr (8.2 hours in the case so far). Costs are currently $605.00

**8. State the date on which you discovered the alleged violation that forms the basis of this action.**

Plaintiff was searching for a new home and finally found his dream home. He placed an offer on the property and applied for his loan on or about February 17, 2020. At that time, Plaintiff was informed his credit score had been reduced by 120 points because of an ARS collections account appearing in his Equifax. Plaintiff immediately began disputing with Defendants.

**9. State the date on which the alleged violation that forms the basis of this action occurred.**

Account Resolution Services, LLC, on November 21, 2018 received the account and began collection efforts. Shortly thereafter, ARS began reporting to the CRAs. Plaintiff disputed to Equifax the inaccurate account on or about Feb 17, 2020. Both Defendants failed to conduct a reasonable investigation as required by the FCRA. Defendants verified the account as accurate and continued reporting the account. Plaintiff disputed again on February 24, 2020 and both Defendants failed to conduct a reasonable investigation. Plaintiff received dispute results indicating the Defendants had verified the inaccurate collections account as accurate. Since February 2020, Plaintiff repeatedly communicated with ARS and the original creditor (InPhynet Contracting) in attempts to cure this serious error. The inaccurate reporting continued until June/July 2020.

**10. Are you seeking or do you intend to seek class certification in this action? If so, briefly describe the putative class.**

Plaintiff does not wish nor plan to seek class certification.

11. **What section(s) of the FCRA are you alleging were violated by Defendant?**

Plaintiff is alleging violations of the FCRA, 15 U.S.C. § 1681. More specifically, Plaintiff is alleging Defendant, Equifax Information Services LLC, violated 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i. Defendant, Account Resolution Services, LLC, violated 15 U.S.C. § 1681s-2(b).

12. **If you allege a violation of 15 U.S.C. § 1681(b):**

(a) **Were you a job applicant or a current employee of Defendant at the time Defendant took the alleged adverse employment action?**

Plaintiff was and is not employed by Defendant.

(b) **Did you ever receive a disclosure from Defendant indicating that Defendant may procure, or cause to be procured, a consumer report? If so, when and by what means?**

Plaintiff did not receive and disclosures from Defendants indicating that Defendant may procure a consumer report as Plaintiff has with Defendants.

(c) **Did you ever authorize, in writing, Defendant to procure, or cause to be procured, a consumer report?**

Plaintiff never gave permission to Defendant or anyone to procure a consumer report.

(d) **If you were a job applicant for a position over which the Secretary of Transportation has the power to establish qualification and maximum hours of service pursuant to section 31502 of Title 49, or a position subject to safety regulation by a State transportation agency, was your only contact with the person who procured, or caused to be procured, the consumer report by mail, telephone, computer, or other similar means?**

N/A

(e) **When was the alleged adverse employment action taken by Defendant?**

N/A

    **(f)**     **What was the alleged adverse employment action?**

N/A

    **(g)**     **When, if at all, did you receive a copy of the consumer report that Defendant relied on, in whole or in part, to take the alleged adverse employment action?**

N/A

    **(h)**     **When, if at all, did you receive a description, in writing, of your rights under the FCRA, as prescribed by the Bureau of Consumer Financial Protection under § 1681g(c)(3)?**

N/A

    **(i)**     **Does the consumer report that was used, in whole or in part, as the basis for the adverse employment action contain medical information, as defined in 15 U.S.C. § 1681a(i)?**

N/A

    **(j)**     **If you answered yes to 12(i), did you provide specific written consent for the furnishing of the consumer report that described in clear and conspicuous language the use for which the information will be furnished?**

N/A

    **13.**     **If you allege a violation of 15 U.S.C. § 1681c, specifically identify the information you contend should not have been included within the consumer report.**

N/A

    **14.**     **If you allege a violation of 15 U.S.C. § 1681i:**

    **(a)**     **What information in the consumer report do you contend is inaccurate, incomplete, or unverifiable?**

Plaintiff disputed the account with Account Resolution Services LLC,

collecting for Iphynet Contracting Services, account number 86549439.

**(b) Did you notify, directly or indirectly, the consumer reporting agency of your dispute? If so, when and by what means?**

When Plaintiff learned of the erroneous ARS account, Plaintiff called Tampa General Hospital and AdventHealth confirming all medical expenses have been paid (original creditors). He then contacted Account Resolution Services directly and explained that all bills have been paid and he should not have a balance of any sort. Plaintiff also disputed to Equifax using their online dispute site. Plaintiff spoke on several occasions to all Defendants and disputed the debt to Equifax on at least two occasions.

**(c) Did you receive a notice from the Defendant consumer reporting agency that it had determined your dispute was frivolous or irrelevant? If so, when did you receive such notification and by what means?**

Equifax responded to Plaintiff's dispute around February 19, 2020 updating and verifying the collections account to reflect an unpaid, high balance. Equifax responded again on February 26, 2020 verifying the inaccurate ARS collections account. ARS, inexplicably after having knowledge the Plaintiff did not owe any money, sent Plaintiff a letter indicating "ARS has verified this information with our client, and confirmed the outstanding balance of $2,811.58". On June 2, 2020 ARS sent a letter to Plaintiff confirming a request to all three CRAs to delete the ARS collections account.

**(d) If you received a notice that your dispute was determined to be frivolous or irrelevant, what information did the notification contain?**

Plaintiff never received a letter from Equifax indicating they were deleting the account. ARS sent a letter to Plaintiff confirming a request to all three CRAs to delete the ARS collections account. Plaintiff never owed the amount that ARS was attempting to collect.

**(e) Was information that was deleted from a consumer report after a reinvestigation prompted by your dispute reinserted into the consumer report?**

Plaintiff is not aware of any deleted accounts that have been added back to his credit report.

 **(f)** **If you answered yes to 14(e), when did you receive notice of the reinsertion and by what means?**

N/A

 **(g)** **If you received a notice of reinsertion referenced in 14(e), what information did the notification contain?**

N/A

 **(h)** **When, if at all, did you receive notice of the consumer reporting agency's completion of its reinvestigation prompted by your dispute?**

Equifax mailed dispute results within 48 to 72 hours after Plaintiff made the disputes online.

 **(i)** **If you received a notice described in 14(h), what information did the notification contain and by what means were you notified?**

Plaintiff would receive a letter in the mail stating "Dispute Results" which concluded their investigation. Equifax on both occasions responded by updating and verifying the collections account to reflect an unpaid, high balance. The ARS collections account continue to report on Plaintiff's Equifax report for several months after his disputes.

 **(j)** **Did you request from the consumer reporting agency a description of its procedure to determine the accuracy and completeness of the information disputed by you?**

Plaintiff provided all the necessary information for Defendants to complete a reasonable investigation and determine the account to be erroneous. Plaintiff has not specifically requested a description of its procedures.

 **(k)** **If you answered yes to 14(j), when, if at all, did you receive the description referenced in 14(j)?**

N/A

 **(l)** **If you filed a statement of dispute with the consumer reporting agency:**

      **(I)** **When did you file your statement of dispute with the consumer reporting agency; and**

N/A

      **(II)** **What consumer reports issued subsequent to the filing of your statement of dispute referenced in 14(l)(I) do not contain your statement or an accurate summary thereof?**

N/A

**(m)** **Did you request and designate any person to receive notice that an item on your consumer report has been deleted or to receive your statement of dispute or summary thereof? If so, when?**

Plaintiff received all correspondence himself and shared such with his Counsel.

**(n)** **If you answered yes to 14(m), list any such person and the date on which said person received a consumer report containing the deleted information.**

N/A

**(o)** **If you are suing a reseller, as defined by 15 U.S.C. § 1681a(u):**
      **(I)** **When did you notify the reseller of your dispute;**

N/A

      **(II)** **What information did you dispute;**

N/A

      **(III)** **If you allege the reseller referred the dispute to a consumer reporting agency for reinvestigation, correction, or removal, when, if at all, did you receive notice of the completion of the reinvestigation, by what means, and what information did the notification contain?**

N/A

_____
(Plaintiff's Signature)

STATE OF FLORIDA
COUNTY OF Pinellas

BEFORE ME, the undersigned authority, on this day, personally appeared Michael Brinkman, who being first duly sworn, and ____ who is personally known to me or  ✓ who produced FL license as identification, deposes and says that he/she has read the foregoing Answers to Interrogatories, knows the contents of same, and to the best of his/her knowledge and belief, the same are true and correct.

SWORN TO AND SUBSCRIBED before me on this 11th day of January, 2021.

NOTARY PUBLIC

Sharla N. Horne
Signature of Person Taking Acknowledgment

Notary Stamp

SHARLA N HORNE
Notary Public - State of Florida
Commission # GG 118337
My Comm. Expires Sep 23, 2021
Bonded through National Notary Assn.

Print Name: Sharla N. Horne
Title: Notary Public
Serial No. (if any): GG 118337
Commission Expires: 9/23/2021

13