UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIKE BRINKMAN,

  Plaintiff,

v.                                                        CASE NO.:  8:20-cv-02453-VMC-AAS

ACCOUNT RESOLUTION SERVICES, LLC,

  Defendant.
_____/

# AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MIKE BRINKMAN (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendant, ACCOUNT RESOLUTION SERVICES, LLC (hereinafter "ARS") (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), Florida Consumer Collection Practice Act ("FCCPA") F.S. 559.72, and the Fair Debt Collections Practice Act, 15 U.S.C. § 1681 ("FDCPA").

## PRELIMINARY STATEMENT

1. This is an action for actual damages, statutory damages, punitive damages, costs and attorney's fees brought pursuant to the FCRA, FCCPA and FDCPA.

2. Today in America there are three major consumer reporting

agencies, Equifax Information Services, LLC ("Equifax"), TransUnion, LLC ("TransUnion") and Experian Information Solutions, LLC ("Experian").

3. Consumer reporting agencies that create consumer reports, like Equifax, Experian and TransUnion are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like ARS, particularly where a consumer makes a dispute about information reported.

4. When a consumer like Plaintiff disputes information through the agencies, those disputes are transmitted to the party furnishing the information, here ARS. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

5. The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).

## JURISDICTION

6. The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. §1331.

7. The Plaintiff is a natural person and resident of Hillsborough County, in the State of Florida. He is a "consumer" as defined by 15 U.S.C. §

7

1681a(c).

8. ARS has their principal place of business located at 1643 North Harrison Parkway, Building H, Suite 100, Sunrise, Florida 33323.

9. ARS is a "debt collector" as defined by F.S. §559.55(7).

10. ARS is a "debt collector" as defined by 15 U.S.C. § 1692(a)(6).

11. The alleged debt that is the subject matter of this complaint is a "consumer debt" as defined by 15 U.S.C. § 1692(a)(5).

## FACTUAL ALLEGATIONS

12. Plaintiff is a natural person who is alleged to owe a debt to ARS.

13. Approximately two (2) years ago, the Plaintiff received a debt collection letter from ARS about a medical bill that was not paid for. Plaintiff did not owe this debt.

14. Upon notification of this incorrect overdue bill listed on his credit report, Plaintiff immediately called the Tampa General Hospital and notified them that he has paid his medical bill in full. Plaintiff also called to dispute with AdventHealth, his medical insurance company, that he has paid his bill in full and did not owe any money. Plaintiff visited an "in-network" facility and did not owe any money. Upon confirmation with AdventHealth that he did not have an outstanding bill, the Plaintiff discarded the letter and believed the error had been fixed.

15. Throughout 2019, ARS repeatedly called and sent bills to Plaintiff attempting to collect a debt he did not owed.

16. In or about February of 2020, Plaintiff found a house he wanted to purchase and applied for an FHA loan with Guaranteed Rate, Inc. The potential lender reached out to Plaintiff and notified him of a collection on his credit that was negatively affecting him, and that due to his current credit score, and reported delinquency, he would have a higher interest rate. Plaintiff's credit score was being lowered 120 points because of this collections account.

17. In or about February of 2020, Plaintiff, contact ARS regarding the incorrect collection and again disputed the accuracy. He was informed that it can take up to 30 days for the report to be reviewed. ARS was aware of Plaintiff's dispute through that phone call. ARS should have known at that time that Plaintiff had a $0.00 balance. If ARS had communicated with the medical provider, they could have immediately resolved the issue.

18. In or about February 17, 2020, Plaintiff filed a dispute online to Equifax concerning the erroneous reporting of the ARS account. Plaintiff provided, within the online dispute, all the necessary information for Equifax and ARS to easily determine that the account had a $0.00 balance and should not be in collections.

19. In the aforementioned online dispute, Plaintiff explained in detail why the ARS account was paid off and requested an investigation by the CRAs and ARS. No one from ARS or Equifax attempted to contact

Plaintiff when investigating the online dispute.

20. The ARS collections account was the result of negligent or willful mishandling by ARS, and failure by Equifax to independently investigate all the facts which the Plaintiff explained in the dispute.

21. Despite Equifax being provided all the relevant information, on or about February 19, 2020, Equifax responded to Plaintiff's dispute and indicated that the ARS account was updated reflecting an unpaid balance of $2,811. Equifax kept the erroneous collection's account on the Plaintiff's credit report despite being notified by Plaintiff that he did not owe any money.

22. ARS knew or should have known throughout the life of the overdue bill that Plaintiff had paid off the account, had visited an "in-network" facility and had no balance, yet continued to report to Equifax.

23. Plaintiff disputed again with Equifax and, on or about February 26, 2020, Plaintiff received another dispute results letter from Equifax (Confirmation number 0055054748) stating the ARS account was updated and verifies as accurate. The ARS collections account continued to be listed on Plaintiff's Equifax credit report.

24. Throughout the entire dispute process and even after, Plaintiff continued to be in communications with ARS and with the medical providers regarding the erroneous collections account.

25. ARS continued to report the inaccurate debt to Equifax and

7

failed to conduct a reasonable investigation of the two disputes by Plaintiff.

26. ARS has a duty to report information to Equifax which it knows to be accurate and should avoid reporting to Equifax information it knows or lacks sufficient knowledge to know is accurate.

27. On March 19, 2020, ARS received an email from Kyra Weiss (from the Insurance) indicating:

> "Joyce, please see the attached explanation of benefits for Michael Brinkman account number 86549439. Provider Inphymet Contracting Services was an in-network provider on date of service 07/25/2017, and therefore should not be a balance billing the member. Please adjust account and remove member for collections"

28. Inexplicably, ARS did not correct the reporting but instead, four days letter (March 23, 2020) mailed a letter to Plaintiff indicating that "ARS has verified this information with our client, and confirmed the outstanding balance of $2,811.58. The account(s) is delinquent." The letter indicated a past due amount and indicated "This is an attempt to collect a debt". ARS had knowledge Plaintiff did not owed the debt but continued to report

29. Plaintiff did not want to lose the house for which he had placed an offer and a deposit. Plaintiff closed on the property on April 1, 2020. Plaintiff was forced to accept the loan offer for 3.99% interest rate instead of the 3.375% he would have achieved had Equifax and ARS conducted a proper investigation.

30. On June 2, 2020, ARS confirmed that they had made a mistake

and responded to Plaintiff's dispute, stating, "a request to Experian, Equifax, and TransUnion to delete any and all information reported by ARS Account Resolution Service".

31. As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

   i. Monies lost by attempting to fix his credit;

   ii. Loss of time attempting to cure the error;

   iii. Mental anguish, stress, aggravation, embarrassment and other related impairments to the enjoyment of life. Plaintiff was desperate to resolve the errors and was forced to close on his home loan after notifying both Defendants of the mistake they were making.

   iv. Denied the opportunity to purchase his home with a much lower APR, creating an increase on his mortgage payments. Plaintiff was notified that to modify his current home loan now that the error was corrected, it would cost approximately $6,000+ in closing fees.

   v. Plaintiff's credit score dropped over 120 points because of the erroneous reporting by the Defendants.

   vi. All conditions precedent to the filing of this action have occurred.

### CAUSES OF ACTION

### COUNT I
### (Violation of the FCRA)

32. Plaintiff re-alleges and fully incorporates paragraphs one (1) through thirty-one (31) above as is fully stated herein.

33. ARS published the ARS representations to Experian and TransUnion and through Experian and TransUnion to all of Plaintiff's

potential lenders on multiple occasions.

34. ARS violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the Plaintiff's dispute of ARS' representation; by failing to review all relevant information regarding same; by failing to accurately respond to Equifax; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the ARS representations to the consumer reporting agencies. Plaintiff provided all the information necessary for ARS to have identified that Plaintiff did not owe money from his hospital stay. Since 2018, ARS was aware that this was a paid in full account, yet continued to report a collection to Equifax. ARS communicated directly with Plaintiff and Plaintiff explained he had communicated with the service provider and he did not owe any money. ARS received an Explanation of Benefits from both the medical provider and Plaintiff but continued reporting the debt.

35. ARS violated 15 U.S.C. §1681s-2(b) by continuing to furnish inaccurate information to Equifax after ARS had been notified that the information was inaccurate. ARS has been aware of Plaintiff's dispute for several months but continued to erroneously report.

36. ARS violated 15 U.S.C. §1681s-2(b) by continuing to furnish inaccurate information to Equifax that ARS knew was inaccurate.

37. ARS did not have any reasonable basis to believe that the

7

Plaintiff was responsible for the account reported in the ARS representation. It also had substantial evidence by which to have verified that the Plaintiff was not the responsible party. ARS knowingly chose to follow procedures which did not review, confirm or verify who the responsible party was for the debt in question. Further, even if ARS would attempt to plea ignorance, it had all of the evidence and information with which to confirm and recognize the Plaintiff was not the liable party.

38.  As a result of this conduct, action and inaction of ARS, Plaintiff suffered damage by loss of time due to Plaintiff's attempts to correct the inaccurate information; stress associated with being sued in court for this fraudulent debt; and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials. Plaintiff, when he needed it most, was denied an APR for his mortgage payment that was a true representation of his credit report.

39.  ARS' conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o. A simple call to the medical provider would have confirmed that Plaintiff visited an "in-network" facility and therefore did not owe any money.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all

issues so triable and judgment against Defendant, ACCOUNT RESOLUTION SERVICES, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the Court may deem just and proper.

## COUNT II
## (Violation of the FCCPA)

39. Plaintiff fully incorporates and re-alleges paragraphs one (1) through thirty-one (31) as if fully set forth herein.

40. At all times relevant to this action ARS is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

41. ARS violated Florida Statute §559.72(5) by Disclosing to a person other than the debtor or her or his family information affecting the debtor's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information or that the information is false. ARS was or should have been aware that Plaintiff did not owed the debt.

42. ARS violated Florida Statute §559.72(9) by Claiming or attempting to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist. ARS mailed Plaintiff on March 26, 2020 attempting to collect a debt it knew did not exist.

43. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ARS for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FDCPA)

44. Plaintiff fully incorporates and re-alleges paragraphs one (1) through thirty-one (31) as if fully set forth herein.

45. At all times relevant to this action ARS is subject to and must abide by 15 U.S.C. § 1692 *et seq*.

46. ARS violated 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. ARS was or should have been aware that Plaintiff did not owe the debt but continued to repeatedly contact Plaintiff's cell phone and to deliver collection letters.

47. ARS violated 15 U.S.C. § 1692(e) by misrepresenting the character, amount and legal status of the debt. ARS had receipt notice that the debt was not

owed to Plaintiff but mailed Plaintiff a false "verification" of the debt and attempted to collect on debt not owed by Plaintiff.

48. ARS violated 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ARS for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Octavio "Tav" Gomez*
Octavio "Tav" Gomez
Florida Bar No.: 0338620
Morgan & Morgan, Tampa, P.A.
201 North Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 983-2889
Primary: TGomez@ForThePeople.com
DGagliano@ForThePeople.com
*Attorney for Plaintiff*