UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MIKE BRINKMAN,

    Plaintiff,

v.                     Case No. 8:20-cv-2453-VMC-AAS

ARS ACCOUNT RESOLUTION
SERVICES,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services' Motion to Exclude Expert Reports and Testimony of Evan Hendricks (Doc. # 53), filed on August 25, 2021. Plaintiff Mike Brinkman responded on September 8, 2021. (Doc # 68). For the reasons that follow, the Motion is granted in part and denied in part.

**I.**   **Background**

In this action, Brinkman asserts claims for violations of the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act (FDCPA), and the Florida Consumer Collection Practices Act (FCCPA) against ARS Account Resolution Services. (Doc. # 46). Among other things, Brinkman alleges ARS Account Resolution Services, which

1

furnished information about Brinkman to credit reporting agencies, violated the FCRA "by failing to fully and properly investigate [Brinkman's] dispute of [ARS Account Resolution Services]' representation [about Brinkman's alleged debt]; by failing to review all relevant information regarding same; by failing to accurately respond to Equifax; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of [ARS Account Resolution Services'] representations to the consumer reporting agencies." (Id. at 8).

Brinkman has hired an expert, Evan Hendricks, in support of his claims. "Since 1981, [Hendricks has] been Editor/Publisher of Privacy Times, a biweekly, Washington-based newsletter that reports on privacy and information law, including the [FCRA]." (Doc. # 53-1 at 30). Hendricks has "researched, written, edited and published many articles on Congressional and State legislative actions, judicial opinions, industry trends and actions, executive branch policies and consumer news as they related to the FCRA." (Id.). He is also the author of a book on credit scoring and reporting. (Id.).

"Since the early 1990s, [Hendricks has] served as an expert witness in numerous FCRA cases and [has] been qualified by the federal courts." (Id.). "As an expert witness, [he has] had the opportunity to read thousands of pages of deposition testimony by consumer reporting agency officials and by credit grantor personnel responsible for reporting data to [credit reporting agencies (CRAs)]. This is significant because CRAs and credit grantors do not openly discuss or publish information on their procedures and practices for handling personal data." (Id.). In addition, Hendricks has "testified numerous times before Congress – always by invitation – on issues related to the collection, maintenance, security, use and disclosure of sensitive personal data, including credit reports and other financial information." (Id. at 31).

In his report, Hendricks opines, among other things, that "[e]ven though [Brinkman] disputed the inaccurate [ARS Account Resolution Services] collection account, [ARS Account Resolution Services] failed to adequately investigate the disputed information and failed to instruct [CRAs] to delete it from [Brinkman's] credit bureau files." (Doc. # 53-1 at 2). "An adequate investigation in a case like [Brinkman's] requires at least some sort of close examination or systematic

inquiry entailing some types of reasonable investigative steps. But [ARS Account Resolution Services] never closely examined or systematically inquired into the disputed, inaccurate information, and never took the necessary reasonably investigative steps in relation to [Brinkman's] disputes." (Id.).

"[ARS Account Resolution Services], as a matter of its policy/practice and/or procedure ('PPP'), did not contact Inphynet [the original creditor] to investigate [Brinkman's] [Automated Consumer Dispute Verification ('ACDV')] disputes. Instead, it merely did a superficial check of its system of record, and matched the identifiers on the ACDV to its system, and 'confirmed' the inaccurate balance." (Id. at 3). Thus, Hendricks asserts, ARS Account Resolution Services "caused the inaccuracies in [Brinkman's] credit reports and then failed to correct them when they were disputed. This caused foreseeable problems for [Brinkman]," including harm to Brinkman's creditworthiness. (Id. at 4).

Now, ARS Account Resolution Services seeks to exclude Hendricks' opinions and testimony. (Doc. # 53). Brinkman has responded (Doc. # 68), and the Motion is ripe for review.

## II.  **Discussion**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. See Id. at 589–90. The Daubert analysis also applies to non-scientific expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).

The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" Hendrix v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010). The district court must assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. Id.

ARS Account Resolution Services challenges the reliability and helpfulness of Hendricks' expert testimony.[1]

---

[1] ARS Account Resolution Services does not clearly challenge Hendricks' qualifications in its Motion. See (Doc. # 53 at 16) (arguing only that Hendricks' opinions are "not reliable or helpful"). To the extent the Motion can be liberally construed as attacking his qualifications, the Court rejects this argument. See, e.g., Williams v. First Advantage LNS Screening Sols. Inc, No. 1:13CV222-MW/GRJ, 2015 WL 9690018, at *2 (N.D. Fla. Mar. 31, 2015) ("In short, this Court finds, as many other courts have, that Mr. Hendricks' experience qualifies him as an expert on consumer reports, the accuracy of data reporting and industry standards pertaining to FCRA compliance."); Brown v. Vivint Solar, Inc., No. 8:18-cv-2838-SCB-JSS, 2020 WL 1479079, at *2 (M.D. Fla. Mar. 26, 2020) ("The Court agrees with Plaintiffs that to the extent that Hendricks opines regarding the industry standards for preventing privacy invasions, as well as comparing Defendants' conduct to industry standards, such is within his experience and expertise, such that he is qualified to render such opinions.").

1. __Reliability__

"Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004)(citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016)(citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and

internal quotation marks omitted). The Court's analysis as to reliability "focus[es] 'solely on principles and methodology, not on the conclusions that they generate.'" Seamon, 813 F.3d at 988 (citation omitted).

ARS Account Resolution Services argues that Hendricks lacks a reliable methodology as his opinions "are not properly grounded or well-reasoned." (Doc. # 53 at 15). Specifically, it contends that Hendricks "fails to explain how his experience leads to the conclusion he reached that [ARS Account Resolution Services] did not conduct an 'adequate' investigation, why his experience is a sufficient basis for that opinion, and how his experience is reliably applied to the facts." (Id. at 16). It characterizes Hendricks' opinions as insupportable speculation or conjecture because "neither he nor anyone else could possibly know that if [ARS Account Resolution Services] had investigated [Brinkman's] automated disputes differently, [ARS Account Resolution Services] 'would have' figured out that Inphynet was incorrectly designated as an out-of-network provider with [Brinkman's] health insurer." (Id. at 17, 19).

The Court disagrees with ARS Account Resolution Services. "Given Hendricks's extensive experience in [the credit reporting industry] and the nature of his testimony,

which is based on his observations of issues with [credit reporting] procedures over several decades, the Court finds that his proposed testimony is sufficiently reliable to pass scrutiny under Rule 702." Anderson v. Equifax Info. Servs., LLC, No. 2:16-cv-2038-JAR, 2018 WL 1542322, at *4 (D. Kan. Mar. 29, 2018); see also Ma v. Equifax Info. Servs., LLC, 288 F. Supp. 3d 1360, 1366–67 (N.D. Ga. 2017) ("Mr. Hendricks has accumulated a wealth of personal knowledge and experience in consumer credit reporting agency practices. Therefore, the Court finds that Mr. Hendricks's methods are sufficiently reliable, and that Defendant's objections go more towards the weight of Mr. Hendricks's testimony than to its admissibility."). Indeed, Hendricks' methodology of analyzing a data furnisher's policies and actions by comparing them to standard industry practices is reliable, so long as he is able to explain the basis for his knowledge of industry standards. See Valenzuela v. Equifax Info. Servs. LLC, No. cv-13-02259-PHX-DLR, 2015 WL 6811585, at *2 (D. Ariz. Nov. 6, 2015) (noting that Hendricks' "method is simply an application of his experience with and understanding of the FCRA and the credit reporting industry to the facts at hand" and finding that, "[a]lthough his methods are not meticulously detailed for every conclusion, they can be

understood and are reliable"); <u>Malverty v. Equifax Info.</u>
<u>Servs., LLC</u>, No. 8:17-cv-1617-JDW-AEP, 2019 WL 5549146, at *2
(M.D. Fla. Oct. 28, 2019) ("Hendricks is allowed to testify
about what additional measures Equifax could have taken to
ensure the accuracy of Rennick's consumer report, both prior
to and following the disputes. This could include
whether Equifax's 'procedures match industry standards if he
dissects the basis for his knowledge of industry standards,
explains how he applied his experience to the facts and how
such application yields his opinion.'" (citation omitted)).

Any alleged flaws in Hendricks' methodology should be
addressed during cross-examination. <u>See</u> <u>Maiz v. Virani</u>, 253
F.3d 641, 666 (11th Cir. 2001) ("Vigorous cross-examination,
presentation of contrary evidence, and careful instruction on
the burden of proof are the traditional and appropriate means
of attacking [debatable] but admissible evidence." (citations
and internal quotation marks omitted)). Thus, the Motion is
denied as to reliability.

   2.   **Assistance to Trier of Fact**

Expert testimony must also assist the trier of fact.
Fed. R. Evid. 702. "By this requirement, expert testimony is
admissible if it concerns matters that are beyond the
understanding of the average lay person." <u>Frazier</u>, 387 F.3d

10

at 1262 (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" Allison v. McGhan, 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted).

So, while "[t]he 'basic standard of relevance . . . is a liberal one,' Daubert, 509 U.S. at 587, . . .[,] if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because there is no 'fit.'" Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1232 (11th Cir. 2009)(citations omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63 (citation omitted).

ARS Account Resolution Services argues that the issues on which Hendricks' opines "are not beyond the understanding of the average layperson so the opinions will not assist the trier of fact." (Doc. # 53 at 15). Additionally, ARS Account Resolution Services insists that some of Hendricks' opinions, specifically his opinion that ARS Account Resolution Services' investigation was not "reasonable," is an

11

impermissible legal conclusion. (Doc. # 53 at 20-21).
Likewise, it asserts that "the FCRA sets forth the damages
that are recoverable for either negligent or willful conduct,
as decided by the jury." (Id. at 21). Thus, it reasons,
Hendricks should not be permitted to testify as to the "'harm'
of inaccurate information remaining on his credit profile,"
which is not recognized under the FCRA. (Id.).

Regarding legal conclusions and types of available
damages, the Court agrees with ARS Account Resolution
Services. "No witness may offer legal conclusions or testify
to the legal implications of conduct." Dudash v. S.-Owners
Ins. Co., No. 8:16-cv-290-JDM-AEP, 2017 WL 1969671, at *2
(M.D. Fla. May 12, 2017). Hendricks may not testify as to
whether ARS Account Resolution Services' investigation was
"accurate" or provide any other legal conclusion. See
Malverty, 2019 WL 5549146, at *3 (holding that Hendricks may
not "testify about whether Equifax's existing procedures or
conduct were unreasonable, reckless, inadequate, or offer any
other legal conclusion"); Anderson, 2018 WL 1542322, at *6
("Hendricks may reference FCRA and industry standards in
testifying about the credit reporting industry, Defendant's
conduct, and perceived issues with Defendant's processes and
procedures. But in doing so, Hendricks must avoid expressing

12

ultimate legal conclusions regarding the reasonableness of
Defendant's procedures for ensuring maximum possible accuracy
and conducting reinvestigations of credit report disputes.").

Nor may Hendricks testify about the damages Brinkman has
incurred. See Malverty, 2019 WL 5549146, at *2 ("I agree with
the reasoning of the courts that have excluded Hendricks'
testimony on damages. There is no indication that he ever met
Rennick, and any opinion on whether Equifax caused Rennick
emotional distress would therefore be speculative. Moreover,
any opinion about the types of damages that are common to
plaintiffs in comparable circumstances would not assist the
jury, as it will be instructed on the proper measure of
damages.").

But the rest of Hendricks' testimony will be helpful to
the jury. "[U]nderstanding the inner workings of the credit
reporting industry may require some specialized knowledge.
And [] Hendricks's unique and specialized knowledge regarding
credit reporting [] practices may help the jury contextualize
and make sense of complicated information." Ma, 288 F. Supp.
3d at 1367; see also Anderson, 2018 WL 1542322, at *4 ("A
layperson is likely not to have this detailed knowledge, and
the Court finds that Hendricks's testimony regarding the
nature of credit reports, FCRA standards, mixed files, and

Defendant's 'inner workings' would be helpful to the trier of fact in understanding both credit industry standards and Defendant's policies and procedures regarding mixed files.").

Thus, the Motion is granted in part and denied in part. Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Healthcare Revenue Recovery Group, LLC d/b/a ARS Account Resolution Services' Motion to Exclude Expert Reports and Testimony of Evan Hendricks (Doc. # 53) is **GRANTED in part and DENIED in part.** Hendricks may not testify as to damages or offer legal conclusions. The Motion is denied in all other respects.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 23rd day of September, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE